UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | | Date | June 1, 2026 |
|---|---|---|---|---|
| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* | | | |

## JS-6

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**      FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.      Introduction

On May 19, 2026, the Court held a bench trial in this case. Having carefully considered the evidence presented at trial, for the following reasons, the Court finds that Plaintiff Sarkis Demerjian ("Plaintiff") has not met his burden to establish that Defendant Mercedes-Benz USA ("Defendant") is liable for violations of the Song-Beverly Act. The Court therefore finds in favor of Defendant.

### II.      Relevant Background

The case arises out of alleged defects with a 2023 Mercedes-Benz E53 AMG, Vehicle Identification Number W1K1J6BB1PF193419 (the "Subject Vehicle"), purchased by Plaintiff on May 22, 2023. On April 2, 2025, Plaintiff filed suit in this Court, alleging a single cause of action for Defendant's willful violation of the Song-Beverly Consumer Warranty Act ("SBCWA") and requesting relief in the form of contract rescission, restitution, compensatory damages, civil penalties, and attorneys' fees. Complaint, ECF No. 1.

In its Memorandum of Contentions of Fact and Law, submitted before trial, Plaintiff asserted the following "claims" against Defendant: (1) violation of the SBCWA, Cal. Civ. Code § 1793.2(d)(2), for

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | 2:25-cv-02873-SVW-SSC | | Date | June 1, 2026 |
| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* | | | |

# JS-6

failure to conform the Subject Vehicle to express warranty after a reasonable number of attempts; (2) violation of the SBCWA, Cal. Civ. Code § 1793.2(b), for failure to commence repairs within a reasonable time or conform goods to the applicable warranties within 30 days; (3) violation of the implied warranty of fitness and merchantability; (4) violation of express warranty; (5) a judicial finding that Plaintiff was entitled to the "Tanner Act presumption" regarding reasonable repair attempts; (6) a judicial finding that Plaintiff is entitled to enforcement of a certified Better Business Bureau ("BBB") arbitration decision requiring repurchase; and (7) a civil penalty. ECF No. 48 at 1.

At trial, the Court received evidence from both parties. The Court also received direct testimony in the form of signed declarations from four witnesses: (1) Plaintiff, (2) Plaintiff's expert, Randall Bounds, (3) Defendant's expert, Clark Bauman, and (4) Defendant's Rule 30(b)(6) corporate designee, Nicholas Cinquepalmi. At trial, each of these witnesses was subjected to thorough cross and re-direct examination by both parties.

### III.    Findings of Fact and Law

Plaintiff asserted three cognizable claims at trial: (1) failure to timely replace the Subject Vehicle or make restitution pursuant to California Civil Code § 1793.2(d); (2) failure to commence repairs of the vehicle within a reasonable time and repair the vehicle to conform with the applicable warranties within thirty days pursuant to California Civil Code § 1793.2(b); and breach of the implied warranty of merchantability pursuant to California Civil Code §§ 1791.1, 1794, and 1795.5.

### A.  First Cause of Action: Failure to Timely Replace

Under the first cause of action under Cal. Civil Code § 1793.2(d), for a plaintiff to establish that a manufacturer failed to promptly repurchase or replace a new motor vehicle after a reasonable number of repair opportunities, the following elements must be met: (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle; (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair; and (3) the

:

| | |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* | | |

# JS-6

manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts. *Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 152, 158 Cal.Rptr.3d 180 (2013).

As a preliminary matter, the Court considers the persuasive weight of the BBB Arbitration Award. After all, the BBB Arbitrator did find the presence of a substantially impairing nonconformity, reasonable repair attempts, and a failure to repair. *Exhibit 26.* However, the evidence shows that this arbitration decision was non-adversarial and telephonic. The arbitrator did not consider expert testimony and could not view the video and photographic evidence. In that context, the Court finds that the findings of the arbitrator are not entitled to any substantial weight in this adversarial setting where the Court is able to hear argument from Defendant, solicit the opinions of experts, and observe Plaintiff's live testimony to independently judge his credibility. The Court therefore conducts its own analysis for each element.

   i.  <u>The Nonconformity Element</u>

At trial, Plaintiff put forward evidence of four alleged defects with the vehicle: (1) the Subject Vehicle autonomously applied the brakes for no discernable reason ("phantom braking"), (2) the Subject Vehicle intermittently displayed a warning symbol on the dashboard, (3) the "active lane assist" feature intermittently malfunctioned, and (4) the Subject Vehicle had an oil leak from the front differential.

In determining whether Plaintiff has offered sufficient evidence of a nonconformity, the Court considers both whether there is perceptible evidence of a defect and also the probability that any perceived defects might have other explanations besides a nonconformity—such as environmental factors. For example, the evidence at trial showed that Plaintiff modified the Subject Vehicle shortly after he purchased it and *before* any repair attempts by tinting his windows and applying a film protection. *Exhibit 7; Exhibit 115.* Since the features of the Subject Vehicle exhibiting alleged defects relied on various sensors and cameras on the front of the vehicle, the rear of the vehicle, and behind the windshield, Plaintiff's intervention with third party products to modify the windows and body of the vehicle may be alternative explanations for intermittent failures to function, if any existed. With this and other considerations in mind, the Court addresses each alleged nonconformity in turn and finds that the only substantial nonconformity established by the evidence was an oil leak from the front differential.

                 :

Initials of Preparer  DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|

| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* |
|---|---|

# JS-6

**a.** Phantom Braking

The alleged "phantom braking" defect is generally uncorroborated by evidence. According to the repair orders, Plaintiff sought repair for this alleged defect only once, on September 13, 2024. *Exhibit 16.* The notes from that repair attempt show that the dealership could not duplicate the alleged defect, even after a test drive. Moreover, even by the time of a subsequent repair order the following month, and in all future repair orders, the service notes, which Plaintiff concedes he reviewed and signed, make no reference to a complaint about ongoing phantom braking. *Exhibit 17.* Plaintiff has not been able to put forward any additional evidence to support his allegation—either in the form of dashboard camera footage or any corroboration from percipient witnesses. The two experts, Mr. Bounds and Mr. Bauman, testified that they inspected the Subject Vehicle on January 29, 2026, and performed a test drive. Declaration of Clark Bauman ("Bauman Decl."), ECF No. 74 ¶ 28; Declaration of Randall Bounds ("Bounds Decl."), ECF No. 78 ¶ 12. According to the testimonies of both experts and the video footage, neither observed phantom braking during this test drive. Furthermore, neither expert identified an observation during his inspection that would explain phantom braking.

The only additional evidence to support the existence of the "phantom braking" is Plaintiff's own, self-serving testimony. However, for several reasons, the Court has reason to doubt the general credibility of Plaintiff's testimony. *First*, Plaintiff testified that his front windshield was not tinted. However, photographic evidence, corroborated explicitly by the credible testimony of Clark Bauman, who inspected the Subject Vehicle, satisfies the Court that the front windshield was, in fact, tinted. *Exhibit 103;* Redirect Examination of Clark Bauman.

*Second*, when asked on cross examination *why* Plaintiff had filed the lawsuit, Plaintiff testified that he had simply wanted Defendant to repurchase the vehicle but chose to file suit with the hope of dismissing the case—as insurance of compliance in case Defendant reneged. In offering this explanation, Plaintiff asserted that it was Plaintiff's idea to file the lawsuit, but that Plaintiff would have been fully satisfied if Defendant had repurchased the vehicle, in which case Plaintiff would have dropped the suit. The Court does not credit either aspect of this testimony. Furthermore, the reasoning is illogical, unlikely, and

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|

| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* |
|---|---|

# JS-6

inconsistent with attorney argument. If Plaintiff were truly motivated by the desire to timely effect compliance with the BBB Arbitration award of repurchase, which already required Defendant to repurchase the Subject Vehicle, Plaintiff's reasonable course of action would have been to bring a petition to confirm the arbitration award. Such a course would have offered a more efficient path to Plaintiff's alleged goals. Plus, considering that the validity of the arbitration award is undisputed, this strategy would have ensured near certain success. Nonetheless, Plaintiff opted to file a claim for violation of the SBCWA, which required the parties to relitigate several disputed issues in an adversarial setting. This chosen course was both slower and significantly riskier for Plaintiff. At closing, Plaintiff's counsel explained that Plaintiff had chosen this action because, as a former law enforcement officer, Plaintiff wanted to see Defendant punished for its wrongdoing and subjected to the punitive penalties for willfulness available in a lemon law action. This argument expressly contradicted Plaintiff's sworn testimony that he would have been happy to achieve a repurchase and dismiss the case. In light of the totality of circumstances, it is the opinion of this Court that the idea to bring suit did *not* originate with Plaintiff, as he testified, but rather with Plaintiff's counsel, who opted to bring this as a lemon-law case (rather than an enforcement action) so as to access the enhanced damages and statutory attorneys' fees available here. Plaintiff's lack of candor on the stand on this issue damages his credibility in the eyes of the Court.

*Third,* Plaintiff testified that, while waiting for repurchase of the Subject Vehicle, Plaintiff has been so concerned about ongoing safety concerns caused by the alleged defects that Plaintiff purchased a separate vehicle last year (a Tesla Model 3), and Plaintiff drives the Subject Vehicle only once every one or two weeks to keep fluid circulating and protect the battery. However, the evidentiary record reflects that Plaintiff has continued to drive the Subject Vehicle significantly more often than he claims in his sworn testimony. For example, the record shows that on December 5, 2024, the mileage of the Subject Vehicle was approximately 8,399, and in January 29, 2026, fewer than fourteen months later, the mileage was 15,705. *Exhibit 26 at 1*; *Exhibit 103-029.* This increase represents over 8,000 miles driven in little over a year. If, as Plaintiff claims, he were driving the Subject Vehicle only once every one or two weeks, each drive would need to be over 200 miles—a figure inconsistent with the stated goal of maintaining fluid circulation and protecting that battery. Rather, the figure is more consistent with regular use of the

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|

| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* |
|---|---|

# JS-6

vehicle and with Plaintiff's prior usage history. It is the opinion of this Court that Plaintiff, under oath, underrepresented his use of the Subject Vehicle to overstate his safety concerns about its alleged defects.

Even if the Subject Vehicle did suddenly and autonomously apply the brakes, there is insufficient evidence to preclude the likely possibility that the vehicle's advanced sensors recognized an obstacle, and its automatic braking system simply operated as designed. Given that Plaintiff's testimony, which the Court does not fully credit, is the only direct evidence of the phantom braking defect,[1] the Court finds that Plaintiff has not met its burden to establish that such a nonconformity ever existed, or that it substantially impaired the use, value, or safety of the vehicle.

**b.** Warning Symbol on the Instrument Cluster

The second alleged nonconformity complained of by Plaintiff was an intermittently reappearing warning light on the dashboard. At trial, it was revealed through substantial evidence that this light represented the following: the "Active Brake Assist" system is either not available or has restricted functions due to dirty sensors or a malfunction. *See Owner's Manual, Exhibit 4* at 420. It further came out at trial that there are a host of reasons why that light would be activated without any nonconformity present. These reasons include: (1) the presence of snow, rain, fog, spray, glare, or variant ambient light; (2) dirt on sensors; (3) nearby radar disruptions; (4) defective or low-pressure tires; (5) complex traffic situations; (6) fast-moving pedestrians or vehicles; (7) unfastened driver's seatbelt; or (8) if the vehicle was recently started. Given the evidence, the Court concludes that if the light went on intermittently, it is for one of those or similar reasons.

As with the alleged phantom braking nonconformity, there is no record in the notes of the repair orders that a technician was ever able to duplicate the alleged defect. Instead, the records indicate that the Subject Vehicle did not generate any codes related to a malfunction with the Active Brake Assist system. Nor did either Plaintiff or Defendant's experts observe the defect during their inspection and test drive of

---

[1] Plaintiff's expert, Randall Bounds, testifies to his opinion that the Subject Vehicle has this defect, however Mr. Bounds also concedes that this opinion is based on what was told to him by Plaintiff. Bounds Decl. ¶ 14(b)(iii-iv).

|  | : |  |
|---|---|---|
| Initials of Preparer | DTA |  |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|

| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* |
|---|---|

# JS-6

the vehicle in January 2026. Plaintiff did offer as evidence several photographs of the Subject Vehicle's instrument cluster, with the warning light illuminated. *Exhibit 9.* However, in each of these photographs where the light indicating an unfastened seatbelt was also visible, the seatbelt light was also illuminated. The fact that the owner's manual identifies an unfastened seatbelt as a normal explanation for the system to be inactive diminishes the evidentiary value of Plaintiff's photographs to prove the presence of a nonconformity. Additionally, Plaintiff presented no evidence about any instance in which the Active Braking Assist system failed to actually apply the brakes when it should have. Credible testimony from expert Clark Bauman corroborated the argument that the light indicated only temporarily limited availability of the system, which was identified in the manual as a normal system response, not system failure. Bauman Decl. ¶¶ 45, 47. Furthermore, the fact that there was no diagnostic evidence is strong evidence of the *absence* of a defect. Again, Bauman's credible testimony corroborated that a malfunction *would have* generated a fault code, so the absence of any code indicating an issue with the system makes normal environmental factors a far more likely explanation for any temporary limitations. *Id.* at ¶¶ 40-43.

Therefore, in the absence of diagnostic evidence of nonconformity, in light of the Court's doubt regarding Plaintiff's general credibility, outlined, *supra*, the Court finds that Plaintiff has failed to establish that there was a nonconformity with the Active Brake Assist system or its related indicator lights that substantially impaired the use, value, or safety of the vehicle.

### c.  Lane Keep Assist

Plaintiff's third complaint of an alleged nonconformity is the intermittent failure of the "Lane Keep Assist" system. At trial, the evidence established that the system, as designed, applies the brakes on one side of the vehicle to help avoid lane changes that the vehicle's computer suspects to be unintentional. When the system functions as intended, an image of the vehicle appears on the instrument cluster, with red lines appearing on one side of the image to indicate where the brakes are applied. This system is not designed to steer the vehicle back into its original lane, merely to provide a warning and some retarding

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|

| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* |
|---|---|

# JS-6

of inadvertent drift.[2] If activated, there is also a feature that includes a haptic warning on the steering wheel when the system applies the brakes to signal the driver to steer back into the lane.

Other than Plaintiff's testimony, there is little evidence to support the existence of this defect. As with the phantom braking, the repair history shows Plaintiff complained of the issue only once, on November 3, 2023. *Exhibit 18*. However, the record from that repair visit indicates that technicians were unable to replicate the issue in either of two test drives, both before and after a software update to the multi-function camera. At the inspection conducted by the experts in January 2026, there is competing testimony about whether the system worked as intended—Randall Bounds contends that the system failed to work as intended, while Clark Bauman disagrees. To be sure, video footage taken by Bauman during the drive showed the system working as designed at one point in the drive. However, video footage taken by Randall Bounds appeared to show a separate instance where the driver's hands were removed from the steering wheel, and the Subject Vehicle appeared to cross into a neighboring lane without the system deploying. Mr. Bounds's testimony is that this failure reveals a defect in the system.[3]

Mr. Bauman, however, credibly argued that two other reasonable explanations could explain why the system did not engage at that moment: (1) the computer in the Subject Vehicle processed the lane change as intentional, and (2) the multi-function camera failed to identify the lane line for reasons other than an underlying defect. The Court finds the second suggestion particularly compelling. According to Mr. Bauman's credible testimony, the multi-function camera recognizes white and yellow to identify lanes and trigger the Lane Assist system. However, the multi-function camera is positioned behind the front windshield. Given the Court's finding that Plaintiff has applied a darkening window tint to the front windshield, that third-party product could be responsible for distorting the color of the lane line processed by the multi-function camera, making the system's ability to recognize lane changes in certain light

---

[2] At trial, it was established that this system is notably different from the Active Steering Assist system, which actually steers the vehicle back into the correct lane during an inadvertent drift. That system, however, is only available when the driver has activated cruise control, and it is not relevant here.

[3] The Court found Mr. Bauman's testimony to be more credible on this issue, in large part because of his superior familiarity with the Mercedes car brand and the proper functions of its features.

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* | | |

# JS-6

conditions less reliable. The fact that the system was recorded working correctly during the same test drive further convinces the Court that the moment identified by Mr. Bounds was not the result of a system failure of Lane Keep Assist. The Court finds Bauman's testimony more compelling.

In the absence of any other evidence, the Court finds that Plaintiff has failed to meet his burden of establishing that a nonconformity existed with the Lane Keep Assist system that substantially impaired the use, value, or safety of the vehicle.

### d.  Oil Leak in the Front Differential

As for the final complaint about an oil leak in the front differential, the Court finds that Plaintiff *has* met his burden of establishing this nonconformity, and that it substantially impaired the use, value, and safety of the vehicle. This defect was identified in a repair order on August 5, 2024, and Plaintiff's credible and unrefuted testimony evidenced that the problem required resealing the front differential and replacing several parts. *Exhibit 14.*

### ii.    The Presentation Element

At trial and through the repair orders submitted as evidence, Plaintiff established that he presented the Subject Vehicle to authorized representatives of Defendant for repair at least once for each alleged nonconformity. This element is therefore met.

### iii.    The Failure to Repair Element

As the Court has already found, there is no evidence that the Subject Vehicle suffered a substantially impairing nonconformity. However, even if the vehicle did have such nonconformities, Plaintiff did not allow authorized representatives to make a reasonable number of repair attempts for the alleged Lane Keep Assist or phantom braking defects. As for the oil leak in the front differential, Defendant's authorized representatives *were* able to conform the vehicle after only one repair attempt. The only alleged nonconformity for which, if established, Plaintiff could establish a reasonable number of repair attempts would be the Active Brake Assist light.

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | | Date | June 1, 2026 |
|---|---|---|---|---|
| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* | | | |

# JS-6

Because Plaintiff participated in a BBB arbitration process before bringing suit, and he had previously brought in the Subject Vehicle to repair facilities on at least four occasions, he is entitled to the presumption that the number of repair attempts to conform the vehicle was reasonable. Cal. Civ. Code § 1793.22(b)-(c). However, this presumption is rebuttable. Here, Defendant effectively rebuts the presumption as to every alleged nonconformity except the Active Brake Assist Light.

The Court agrees with its sister court that "the reasonable opportunity to repair applies to a single, particular defect. *Fei Lui v. BMW of N. Am., LLC*, 2018 WL 11348341, at *2 (C.D. Cal. 2018). Furthermore, for a number of repair attempts to be reasonable, it must be greater than one. *Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1208 (2003). Here, the repair orders, which were reviewed and signed by Plaintiff, show unequivocally that for each of the alleged phantom braking and Lane Keep Assist defects, Plaintiff brought the vehicle in for repair only once, and the repair facility was unable to duplicate the problem or find any corroborating diagnostic codes. As for the front differential oil leak, not only was it presented for repair only once, but it was successfully repaired and conformed to warranty at that service visit.

The only defect that Plaintiff complained about and brought in for repair on multiple occasions is the Active Brake Assist light. As to this issue alone, if it were a nonconformity, given the presumption, Plaintiff likely *would have* been able to establish that a reasonable number of repair attempts had been made. However, as stated above, Defendant *has* rebutted the presumption and established that the Active Assist Light was not defective.

**B. Second Cause of Action: Failure to Commence Repairs Within a Reasonable Time and Repair the Vehicle to Conform with the Applicable Warranties**

The same evidentiary insufficiencies outlined, *supra*, are also fatal to Plaintiff's claim under § 1793.2(b). Simply, Plaintiff has failed to show that the Subject Vehicle had any defects covered by the warranty that substantially impaired use, value, or safety, other than the oil leak in the front differential.

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|

| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* |
|---|---|

# JS-6

Furthermore, to establish a claim for failure to repair within a reasonable time, Plaintiff would need to demonstrate that Defendant's authorized representatives failed to "complete any *single* repair attempt within 30 days." *Schick v. BMW of N. Am., LLC*, 801 F. App'x 519, 521 (9th Cir. 2020). Here, Plaintiff testified that the longest repair was the resealing of the front differential—a repair, which lasted only ten or eleven days. Therefore, even if there were additional defects established, Plaintiff would still fail to meet his burden under § 1793.2(b).

### C. Third Cause of Action: Breach of Implied Warranty

To establish a breach of implied warranty under California Civil Code §§ 1791.1, 1794, and 1795.5, Plaintiff must show that the Subject Vehicle was not fit for the ordinary purposes for which such a vehicle is used. Again, Plaintiff's inability to establish that any nonconformities actually existed regarding the Lane Keep Assist, Active Brake Assist light, or braking system, is fatal to the claim that such nonconformities were breaches of the implied warranty.

As for the oil leak in the front differential, Defendant's ability to promptly repair the issue on its first repair attempt and conform the Subject Vehicle spares Defendant liability for breach.

### D. Civil Penalties

Even if Plaintiff were able to establish a violation under the SBCWA, Civil Penalties would not be available. There are two types of civil penalties available for a violation of § 1793(d)(2): (1) non-willful penalties under Cal. Civ. Code § 1794(e); and (2) willful penalties under § 1794(c). Although the Court need not reach this issue, it addresses each, briefly.

To be entitled to non-willful penalties, Plaintiff would need to establish that Defendant, as a seller of new motor vehicles, failed to maintain a qualified third-party dispute resolution process. A qualified program is one that substantially complies with Cal. Civ. Code § 1793.22. This means that the process: (1) complies with the minimum requirements of the Federal Trade Commission for informal dispute settlement procedures; (2) renders decisions which are binding on the manufacturer if the buyer elects to

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|

| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* |
|---|---|

## JS-6

accept the decision; (3) prescribes a reasonable time, not to exceed 30 days after the decision is accepted by the buyer, within which the manufacturer or its agent must fulfill the terms of its decisions; (4) provides arbitrators who are assigned to decide disputes with copies of, and instruction in, the provisions of the Federal Trade Commission's regulations; (5) requires the manufacturer to replace or provide restitution to the buyer when the process orders; (6) provides, at the request of the arbitrator, an expert inspection and written report on the condition of a nonconforming motor vehicle, at no cost to the buyer; (7) takes into account, in rendering decisions, all legal and equitable factors; (8) requires that no arbitrator deciding a dispute may be a party to the dispute and that no other person may be allowed to participate substantively in the merits of any dispute with the arbitrator unless the buyer is allowed to participate also; and (9) obtains and maintains certification by the Department of Consumer Affairs. Cal. Civ. Code § 1793.22(d).

Here, Defendant has established that Defendant does maintain such a process. In fact, Defendant availed himself of that process and obtained a favorable arbitration award, which he chose not to enforce, seeking a greater windfall. Non-willful penalties would simply not be available here as a matter of law. Plaintiff's only argument that Defendant does not maintain a compliant process is that Defendant did not comply with the arbitrator's required repurchase within thirty days. As the Court outlines, *infra*, this misrepresents the facts. However, even if it were true that Defendant did fail to effect a timely repurchase, such a failure would not be a violation of § 1793(d)(3). Under the statute, the *process* is required to *prescribe* a reasonable time, not to exceed thirty days, wherein the manufacturer must comply with the award. Here, the repurchase award contained exactly such a prescription. *Exhibit 26* at 7 ("The manufacturer shall repurchase the [Subject Vehicle]…within 30 days after the manufacturer is notified that the customer has accepted this decision.").

Whether the manufacturer actually repurchased the vehicle as required by the award *after* the arbitration process concluded is immaterial to the issue of whether the process itself was compliant. The important inquiry to evaluate the process is whether the award required compliance within thirty days. Here, the award's clear language included such a requirement, so that aspect of the process was evidently compliant with the statute. Plaintiff nonetheless argued that the Court must find Defendant's post-arbitration failure to abide by the award to be evidence of a non-compliant *process* because to find

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | Date | June 1, 2026 |
|---|---|---|---|

| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* |
|---|---|

# JS-6

otherwise would allow Defendant a loophole through which to avoid its statutory obligations. The Court does not agree. Requiring the award to include a provision prescribing a thirty-day compliance period, such as the provision present here, is sufficient to protect the buyer's interest and ensure compliance by the manufacturer. Such a provision may be easily enforced under the full authority of the judicial system through a petition to confirm the award. The availability of this option for a buyer avoids the risk of the loophole Plaintiff describes. That Plaintiff opted not to pursue this option is irrelevant.

As for willful penalties, Plaintiff offered no discernible evidence, nor did it plead any facts that would indicate willful failure to repurchase before the BBB arbitration process commenced. The record shows that Plaintiff called Defendant on the phone to request a refund. Defendant estimated six to eight weeks to investigate and respond to the request. The Court has seen no evidence that an administrative delay of that length is unnecessary, abnormal, or unreasonable. Before the estimated time had elapsed, Plaintiff opted to file a BBB claim instead of waiting. This does not indicate willful failure to repurchase by Defendant, merely that Defendant took a reasonable amount of time to consider the allegations and determine its obligations.

Plaintiff's central argument on this issue is that Defendant's failure to timely repurchase the Subject Vehicle *after* the arbitration process demonstrated willful noncompliance with its statutory obligations. However, this theory is also not supported by the record.[4] Rather, the evidence shows that after the arbitration award was "accepted" by Plaintiff on January 20, 2026, Defendant's negotiating agent promptly corresponded with Plaintiff's counsel via email on February 4, 2026, to acquire the necessary financial documents to determine the value and status of the vehicle, so as to calculate the amount Defendant would be required to pay. Within six days of receiving those documents, Defendant made a repurchase offer. Notably, this offer was substantially greater than the amount actually required under the

---

[4] Plaintiff highlights a June 25, 2026, Notice of Violation by the California Department of Consumer Affair's Arbitration Certification Program, which found that Defendant had not fulfilled the requirements of the arbitration award within thirty days. However, the Court gives no evidentiary weight to this notice over the Court's own findings as it came out at trial that the findings represented in the notice were based only on a review of Plaintiff's submitted complaint, with no opportunity for adversarial challenge by Defendant, such as is available here.

:

|   |   |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-02873-SVW-SSC | | Date | June 1, 2026 |
|---|---|---|---|---|

| Title | *Sarkis Demerjian v. Mercedes-Benz USA LLC et al* |
|---|---|

# JS-6

award and included $3,000 in attorneys' fees, also not contemplated by the award.[5] Furthermore, the arbitration award required any dispute about the amount owed to be addressed through written correspondence with the arbitrator. However, Plaintiff failed to comply with this requirement, instead negotiating directly with Defendant to attempt to extract an addition $4,500 for add-ons Plaintiff allegedly acquired after purchasing the vehicle. When asked to provide evidence of these additional payments amounting to $4,500, Plaintiff's generally deficient evidence failed to even attempt to prove that he had paid even $2,400 for the alleged add-ons. Nonetheless, the record shows a good faith effort by Defendant to engage in productive negotiations with Plaintiff.

In all the post-arbitration correspondences between Plaintiff and Defendant do not show that Defendant willfully violated its obligations to repurchase the vehicle. Rather, Defendant offered to repurchase the Subject Vehicle at a higher price than contemplated in the award, while Plaintiff violated the arbitration award by seeking to negotiate a higher payment price, which extended negotiation past the window of compliance with the original arbitration award and ultimately led to the instant litigation. In this context, willful civil penalties would not be appropriate, even if Plaintiff were successful on the merits of his SBCWA claims.

## IV.    Conclusion

For the foregoing reasons, the Court finds that Plaintiff has not met its burden to establish a violation of the Song Beverly Consumer Warranty Act by Defendant.

**IT IS SO ORDERED.**

---

[5] By the Court's calculation, the arbitration award contemplated a repurchase price of $91,362.70. This is derived from the difference between the total amount paid for the vehicle ($93,522.29) and the statutory mileage offset ($2,159.59) calculated from the mileage of 2,771, cited in the award. Defendant's offer on February 10, 2026, was for $97,389.29, including attorneys' fees. This offer therefore exceeded the actual amount owed under the arbitration award by over $6,000.

:

| Initials of Preparer | DTA |
|---|---|